**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **23-mj-232** |
| | : | |
| **JOHN PARKER,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

      The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm).[1]   The defendant is charged at this time under § 922(g) and not § 924(c), while the large quantity of suspected cocaine recovered from his person undergoes further analysis. Nevertheless, the Court can and should apply the statutory presumption of detention under § 3142(e)(3)(B) based on the evidence of firearm possession in furtherance of drug trafficking under § 924(c).  *See United States v. Lee*, 206 F. Supp. 3d 103, 110-111 (D.D.C. 2016) (applying presumption under 924(c) despite absence of such a charge); *see United States v. Bess*, 678 F. Supp. 929, 931-32 (D.D.C. 1988) (adopting the reasoning of the magistrate judge "that there was probable cause to believe that the Defendant committed an offense under 18 U.S.C. § 924(c), and rul[ing] that this was sufficient to trigger the statutory presumption, even though Defendant had not been formally charged with violating 18 U.S.C. § 924(c)").

      Even if the Court declines to apply the presumption, this case presents what former Chief Judge Howell called "the trifecta of circumstances" where a "determination of pretrial release is an outlier, not the norm," namely a current charge involving possession of a loaded firearm, a prior

---

[1] The government further requests temporary detention under 3142(d)(1)(A)(i)(iii) (supervised release for federal conviction).

violent crime involving a firearm and grabbing a police officer by the neck, and an instant offense occurring on supervised release.  *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 U.S. Dist. LEXIS 18988, at *35 (D.D.C. Feb. 6, 2023) (citing *United States v. Simpkins*, 826 F.2d 94, 97 (D.C. Cir. 1987)).   The defendant poses a demonstrated danger to the public if he were released. As described below, all four statutory factors in Section 3142(g) strongly favor pretrial detention.

## I.  Factual and Procedural History

On Thursday, August 24, 2023 around 8:00 PM, members of the U.S. Park Police were working near 7th and H Street NW to address "open-air drug transactions" and individuals "committing these same crimes over and over again" in the Chinatown neighborhood.  *See* Peter Hermann, *Residents, business owners confront D.C. officials over Chinatown crime*, THE WASHINGTON POST (Aug. 5, 2023), available at https://www.washingtonpost.com/dc-md-va/2023/08/05/chinatown-crime-dc-police/.   Investigator Keness and Sergeant Payne were observing with binoculars the area surrounding Chinatown's Friendship Arch from an observation post.  Shortly before 8:30 PM, the investigators saw an apparent drug transaction on the north sidewalk of H Street NW next to the bus stop outside of the Walgreens.   The investigators saw a black male in a fluorescent green shirt approach a second black male wearing a green Nike hooded sweatshirt and blue jeans (later identified as the defendant John Parker).   The suspected buyer in was seen handing the defendant an unknown amount of cash.   The defendant took out a clear plastic bag containing a large white substance consistent with crack cocaine and handed the buyer some quantity of the substance.   Investigators saw the buyer walk across the street toward the Chinatown Metro.   Meanwhile, the defendant headed toward the Walgreens.

Investigator Keness and Sergeant Payne saw the defendant inside the Walgreens from their

observation post.   The defendant left the Walgreens and sat on the black iron railing in front of the store on the 7th Street side.   When he noticed a marked police car at the intersection, he immediately walked back into Walgreens.   Investigator Keness and Sergeant Payne were able to keep eyes on him through the store windows and saw him walking by the cashiers toward a far corner of the store facing H Street.   The investigators gave a lookout to the arrest team.

U.S. Park Police Officers Davidson and Heckathorn responded to the Walgreens and observed that the defendant was the only person in the far corner of the store facing H Street. When Officer Davidson attempted to detain the defendant, he tried to pull away and brought his hands toward his groin and the pocket of his hooded sweatshirt.   Officer Davidson grabbed the defendant, took him to the ground, and placed him in handcuffs.

In the defendant's groin area was a black Ruger LCP .380 caliber semi-automatic handgun, loaded with one round in the chamber and three rounds in a 10-round magazine.   In the defendant's compression pants was a clear plastic bag inside of another clear-knotted plastic bag, which contained a white rock like substance of suspected crack cocaine weighing 54.6 grams.   In the pocket of the defendant's hooded sweatshirt was another clear-knotted plastic bag containing 27.7 grams of suspected crack cocaine in 75 clear capsules and six purple capsules.   The defendant was in possession of $211.00 in small denominations.   At the station, the suspected crack cocaine was field tested and yielded a positive color reaction for the presence of cocaine base.   Based on the officers' training and experience, the amount of suspected crack cocaine recovered from the defendant—approximately 82.3 grams—together with the packaging and large quantity of cash, strongly suggested distribution, not personal possession.

A background check revealed that the defendant was previously convicted of a felony

3

punishable by a term of incarceration greater than one year.   Specifically, in D.C. Superior Court case number 2020-CF2-004786, he was convicted of Assault on a Police Officer (APO) and Carrying a Pistol Without a License (CPWL) and sentenced to a fully suspended term of incarceration of 10 months.   As part of the plea agreement, the defendant acknowledged that he understood that the offense of CPWL carries a maximum penalty of 5 years' imprisonment.   As a result, Parker was aware at the time of his arrest that he had a prior conviction for a crime punishable by more than one year.   Less than two months before his arrest in this case, the defendant was placed on supervised release after receiving a "time served" sentence from Chief Judge Boasberg for possession of N-Ethylpentylone in case number 22-cr-321.

On August 24, 2023, the defendant was arrested and charged the following day with Possession with Intent to Distribute Crack Cocaine While Armed, Carrying a Pistol Without a License, Unregistered Firearm, and Unregistered Ammunition in D.C. Superior Court, where he was preventatively detained under 23 D.C. Code 1322(b) pending a preliminary hearing.   On August 25, 2023, the defendant was charged by complaint in federal court with one count of 18 U.S.C. § 922(g).   On August 28, 2023, at the defendant's initial appearance, the government orally moved for detention pending trial pursuant to the above-referenced provisions of the federal bail statute, and any additional provisions that may apply upon review of the Pretrial Services Agency report (PSR).   A detention hearing is scheduled for August 30, 2023 at 1:30 PM.

## II.  Legal Authority and Argument

As an initial matter, the Court should impose the presumption of pretrial detention under § 3142(e)(3)(B) because there is more than probable cause to believe the defendant committed an offense under § 924(c).   The Bail Reform Act creates a rebuttable presumption "that no condition

4

or combination of conditions will reasonably assure the . . . safety of the community if the judicial officer finds that there is probable cause to believe that the [defendant] committed . . . an offense under section 924(c)."   18 U.S.C. § 3142(e)(3)(B).   The distribution quantity of white substance recovered from the defendant field tested positive for cocaine and the government expects to charge the defendant under § 924(c) once further analysis confirms the initial field test.[2]   As this stage, however, the absence of such a charge in no way prevents the Court from applying the presumption:

> [T]he facts found by the judicial officer at the detention hearing determine whether the statutory presumption is implicated; . . . the complaint need not allege a violation of one of the particular predicate offenses for the presumption to come into play.   If the facts establish probable cause that the defendant has violated 18 U.S.C. § 924(c), the judicial officer should give proper weight to Congress's general factual view that the defendant poses an unreasonable risk of danger to the community.

*Lee*, 206 F. Supp. 3d at 110 (citing *Bess*, 678 F. Supp at 934).   On this record, the Court can and should find probable cause that the defendant violated § 924(c) based on the below video evidence of drug distribution, coupled with the loaded firearm recovered from the defendant's waistband.

Even if the Court declines to apply the presumption, a review and understanding of the facts and circumstances in this case require the Court to conclude that there are no conditions or combination of conditions that would assure the safety of the community.   *See* 18 U.S.C. § 3142(e)(1).   All four § 3142(g) factors favor detention pending trial, including (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the

---

[2] In 22-cr-321, the defendant was arrested with a large quantity of a substance that field tested positive for cocaine, but was later determined to be N,N-Dimethylpentylone or "boot," which is a positional isomer of the substance N-Ethylpentylone and therefore a Schedule I controlled substance.

community that would be posed by his release.   *See* 18 U.S.C. § 3142(g).

In addition, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."   18 U.S.C. § 3142(f).   Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer.   *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).   *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.   *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

## A.   <u>Nature and Circumstances of the Offenses Charged</u>

The defendant is charged with possessing while on supervised release a loaded semi-automatic handgun under 18 U.S.C. § 922(g)—a serious crime carrying up to 15 years in prison under § 924(a)(8).   The record makes clear that he possessed the firearm during a drug trafficking crime.   Setting aside the drug trafficking, this Court has warned against discounting the danger associated with possessing these sort of weapons.   *See Blackson*, 2023 U.S. Dist. LEXIS 18988, at *21-22 (the absence of evidence of "use" "does little to detract from" the danger posed by loaded firearms).   Moreover, at the time of his arrest, he was on supervised release in 22-cr-321, which "mak[es] evident his disregard of the law forbidding possession of a firearm and automatically rais[es] concern about whether he can be trusted to comply with any conditions of pretrial release." *Id.* at *23-24.   In fact, when he got a second chance two months ago with a "time served" sentence, Chief Judge Boasberg specifically warned him not to possess a firearm.

B.    <u>**Weight of the Evidence against the Defendant**</u>

The second factor, the weight of the evidence, strongly favors detention.    Law enforcement recovered the weapon on the defendant's person after officers saw him reach in that direction.   The defendant is captured on video outside of the Walgreens engaging in brazen hand-to-hand transactions, wearing the same green Nike hoodie he was seen wearing from the observation post and upon arrest.







Last fall, pursuant to a search warrant, the government found texts on the defendant's phone setting up a number of drug transactions (his messages are in green).







Source Extraction:
Phone - File System



Source Extraction:
Phone - File System

This Court has highlighted the importance of weighing the strength of the case "as all factors." *Id.* at *29-30 ("[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true."). Similarly, here, the weight of the evidence increases the prospects that the defendant will fail to appear and otherwise present a danger to the community.

### C.    The Defendant's History and Characteristics

The third factor—the history and characteristics of the defendant—heavily favors detention. Less than two months ago, the defendant received an opportunity with a "time served" sentence before Chief Judge Boasberg for two counts of possessing a Schedule I narcotic in 22-cr-321. There, as here, a large quantity of suspected crack cocaine and cash was recovered from the defendant's underwear in September 2022. At the time of his arrest in that case, he was on probation and pretrial supervision in multiple gun cases and found in possession of a large quantity of then-suspected crack cocaine (47.5 grams). The defendant was initially indicted for Unlawful Possession with Intent to Distribute 28 grams or more of a mixture containing cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii). However, chemical analysis of the substance later revealed that it was not cocaine, but rather N, N-Dimethylpentylone.[3]

In D.C. Superior Court case 2020-CF2-4786, the defendant pled guilty to APO and CPWL. According to his sworn proffer, the defendant grabbed an MPD officer by the neck before he was

---

[3] Because the substance in 22-cr-321 turned out to be N, N-Dimethylpentylone despite field testing positive for crack-cocaine, the government is conducting further investigation prior to charging the defendant with offenses related to drug trafficking, along with a violation of 18 U.S.C. § 924(c).

found in possession of a semi-automatic handgun.   The defendant was sentenced to 10 months (fully suspended) for CPWL and a concurrent 90 days (also suspended) for APO.   His probation in that case terminated on March 30, 2023, just five months ago.

While that case was pending, the defendant picked up two additional gun arrests.   Two months after the events that led to the defendant's conviction in 2020-CF2-4786 and while on pretrial supervision in that case, the defendant was arrested for CPWL after he was found with a firearm in his satchel.   He was also in possession of more than five ounces of marijuana and a scale.   (That case—2020-CF2-5924—was later dismissed as part of the plea agreement in 2020-CF2-4786.)   While under pretrial supervision in both cases, the defendant was stopped with a firearm just five months after his arrest in 2020-CF2-5924.   The firearm was found on the defendant's person.   (The case was also later dismissed as part of a plea agreement with 2020-CF2-4786.)

The defendant was released from custody and sentenced to probation in 2020-CF2-4786 on August 2, 2021.   Three months later, on November 4, 2021, the defendant was seen by MPD officers with a large bag of suspected marijuana.   After seeing the officers, the defendant took off running and tossed a firearm during flight.   Based on his actions—the fourth time in 18 months he was stopped by MPD officers for gun and/or drug possession—the defendant was charged in Superior Court case 2021-CF2-6325 with Felon in Possession of a Firearm.   At the time of his arrest in his prior federal case (22-cr-321), the defendant was on high intensity supervision with GPS monitoring in 2021-CF2-6325, which was later dismissed in October 2022.

After pleading guilty in his prior federal case (22-cr-321), Mr. Parker was arrested in D.C. for allegedly violently assaulting his girlfriend and then punching another individual who tried to

intervene and assist Mr. Parker's girlfriend. He was charged in D.C. Superior Court case 2023-DVM-541 and placed under High Intensity Supervision. Six days later, he was arrested on charges in Prince George's County for Possession with Intent to Distribute a Controlled Substance, Resisting Arrest, and 2nd Degree Assault on Law Enforcement. Additionally, a warrant was issued in Virginia in April, 2023 for firearms and drug related offenses that occurred a year earlier.   He also now has two other pending cases for failing to appear and felony eluding of the police.

      As it stands, the defendant is under supervision for pending cases in Maryland, Virginia, and D.C., in addition to his supervision with United States Probation.   The defendant faces drug charges in Maryland (C-16-CR-23-002173), assault charges in D.C. (2023-DVM-541), and gun, drug, and failure to appear charges in Virginia (GC23001041/42).   And yet, the defendant was once again arrested with guns and drugs on his person.   Indeed, other than the original arrest in 2020-CF2-4786, Mr. Parker has been under supervision for each of the prior convictions and arrests described above – as well as in the current case.   The defendant has been given numerous chances to remain in the community under supervision in his various criminal matters, but as this history makes clear, the Court should have no faith that he will refrain from possessing firearms in connection with drug distribution if released.

      **D.**     **Danger to the Community**

      The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, similarly weighs heavily in favor of detention. The defendant has served two recent terms of incarceration for CPWL/APO and federal drug possession, is currently on supervised release in a federal case, and currently has a pending firearms and drug possession case in Virginia (along with four other pending cases).   None of this hast deterred him

from illegally possessing a firearm yet again.   Moreover, the fact that the defendant possessed the firearm along with large quantities of suspected cocaine and cash suggests that he carries the gun to protect himself, his drugs, and his money.   This potentially deadly combination of drugs and guns is the reason Congress takes this kind of conduct so seriously.   The defendant once again put himself in a situation where he needed a gun that could kill someone in the community, at a Walgreens no less, should he deem it necessary.

This Court has repeatedly highlighted the danger of unlawful possession of a fully loaded firearm carried with such easy, quick access in someone's waistband.  *See Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33.   The firearm recovered from the defendant's waistband at a Walgreens had the potential to cause grievous bodily injury (or death) to law enforcement, the defendant, and members of the community.   Adding to the danger is the strong evidence that the defendant was using the firearm in furtherance of drug trafficking, although he is not charged under 924(c) to date.   The charged offense involves possession of a highly dangerous weapon, despite the fact that defendant is legally barred from such possession as a convicted felon, despite being on both supervised release for drug possession and having completed supervised release for CPWL less than five months ago, and despite being on pre-trial release in five different pending cases.   Given that the defendant has armed himself repeatedly since turning 18, there is every reason to think that he will obtain another unregistered gun upon release to the extent the Court is inclined to consider third party custody in this case.

Possessing a fully loaded and concealed handgun while in the community poses an inherent risk of danger to the public.  *See United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful

firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (same); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly where, as here, a defendant's prior conviction shows a predilection for violence); *United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). The defendant's possession of a loaded semi-automatic handgun in a Walgreens, and while on supervised and pre-trial release, demonstrates his danger to the community. This factor, along with the other three factors, weighs in favor of the defendant's detention without bond pending trial.

### III.   Conclusion

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

> Respectfully submitted,
>
> MATTHEW M. GRAVES
> UNITED STATES ATTORNEY
> D.C. Bar No. 481052
>
> By:   /s/ *Connor Mullin*
>        Connor Mullin
>        D.C. Bar No. 981715
>        Assistant United States Attorney
>        601 D Street NW, Fifth Floor
>        Washington, D.C. 20530
>        E-mail: connor.mullin@usdoj.gov
>        Telephone: (202) 252-7079